# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WESTRA CONSTRUCTION, INC.,** : | CIVIL ACTION NO. 1:03-CV-0833 |
| Plaintiff : | (Judge Conner) |
| v. : | |
| **UNITED STATE FIDELITY &** : | |
| **GUARANTY COMPANY,** : | |
| Defendant : | |

## MEMORANDUM

Currently before the court is plaintiff's motion (Doc. 25) to dismiss a pending motion to vacate or modify an arbitration award. For the reasons that follow, the motion to dismiss will be denied.

## I.   Statement of Facts

In August 1999 Westra Construction, Inc. ("Westra") entered into a subcontract with CCI Construction Company, Inc. ("CCI") to provide general trades work on a renovation project for the Pennsylvania Turnpike Commission. (See Doc. 25 ¶ 1; Doc. 22 ¶ 9, 10; Doc. 1 ¶ 5.) United States Fidelity & Guaranty Company ("USF&G") served as CCI's surety on this project, issuing a payment bond naming CCI the principal, and the Pennsylvania Turnpike Commission the obligee. (See Doc. 1 ¶ 6; Doc. 22 ¶ 12.) In March 2000 Alexander Constructors, Inc. ("Alexander") assumed CCI's responsibilities, replacing it as the principal on USF&G's bond. (See Doc. 22 ¶ 12-14.)

In August 2002 Westra filed a demand with the American Arbitration Association against CCI and Alexander for approximately $2.3 million, reflecting monies allegedly due for work completed by Westra on the Turnpike Commission project.  (See Doc. 22 ¶ 24.)  Alexander filed a counterclaim against Westra, seeking approximately $160,000 for monies it was allegedly due.  (See Doc. 22 ¶ 6.)  While USF&G was not a party to the arbitration, it monitored the proceedings and funded, in part, Alexander's defense.  In May 2003, Westra initiated the instant action against USF&G, averring that USF&G was liable for the debts which were the subject of the arbitration proceedings.  (See Doc. 1.)

In February 2005, after eighty-five days of testimony, the arbitration proceedings concluded.  (Doc. 22 ¶ 32.)  Six months later the arbitrators rendered a decision, wherein Westra was deemed the "prevailing party" of the dispute and awarded $1,014,943.18, consisting of approximately $775,000 for unpaid work, $26,000 in interest, $20,000 in arbitrator's fees, and $195,000 in attorneys' fees.  (Doc. 22 ¶ 40; Doc. 22, attach. 8.)  Alexander was awarded approximately $81,800 on its counterclaim, consisting of $52,000 credit for overpayment, $25,000 for project administration and supervision costs, and $4,800 in other credits.  (Doc. 22, attach. 8.)

In October 2005 Alexander filed a petition to vacate or modify the arbitration award, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16.  (See Doc. 30 at 2; see also Alexander Constructors, Inc. v. Westra Construction, Inc., No. 1:05-CV-2021 (M.D. Pa. filed Oct. 4, 2005)).  However, unbeknownst to counsel for Alexander or to

USF&G, Alexander's parent company had filed a voluntary petition for bankruptcy several days earlier.  (Doc. 22 ¶ 43; Doc. 25 ¶ 7; Doc. 30 at 2.)  Proceedings on Alexander's petition to vacate the arbitration award were stayed pending disposition of its petition before the bankruptcy court.  (See Alexander Constructors, Inc. v. Westra Construction, Inc., No. 1:05-CV-2021 (M.D. Pa. Jan. 20, 2006) (order staying case pending bankruptcy)).

Upon learning of Alexander's bankruptcy, USF&G filed in the above-captioned action a motion (Doc. 22) to vacate or modify the arbitration award, averring that the arbitration was egregiously flawed and manifestly unjust, and that the arbitrators "so imperfectly executed their powers that a mutual, final and definite award upon the subject matter was not made."  (Doc. 22 ¶¶ 7, 8, 53.)  Westra responded by filing the instant motion to dismiss (Doc. 25), arguing that USF&G does not have standing to challenge the award.  The parties fully briefed the issues and a hearing on Westra's motion to dismiss was held on April 17, 2006.  The motion is now ripe for disposition.

## II.   Discussion

The Federal Arbitration Act ("FAA") permits "any party to [an] arbitration" to petition the courts for the correction or modification of an arbitration award where there was an "evident material miscalculation" in the award, the arbitrators exceeded their authority in ruling on a matter not before them, or the award was "imperfect in matter of form."  9 U.S.C. § 11(a)-(c); see also id. § 10.  Similarly, a court may vacate an award that is the result of "corruption, fraud, or undue

means," or where the arbitrators were partial, corrupt, guilty of misconduct, or otherwise exceeded or "imperfectly executed" their power.  Id. § 10(a)(1)-(4).

The plain language of the FAA appears to limit the availability of relief to parties to the arbitration proceedings.  See id. § 11.  However, there is precedence for permitting non-parties to challenge an arbitration award when the nonparty is adversely affected by the decision.  See Ass'n of Contracting Plumbers of City of New York, Inc. v. Local Union No. 2 United Ass'n of Journeymen, 841 F.2d 461, 466-67 (2d Cir. 1988) (holding that nonparties to arbitration may attack the award where the award "affects the [nonparties] in a sufficiently substantial and concrete manner"); Bruscianelli v. Triemstra, No. 99-C-6446, 2000 WL 1100439 (N.D. Ill. Aug. 4, 2000) (holding that, in "unique" case where arbitrator issues ruling purporting to bind nonparty, nonparty may challenge award).

In the case *sub judice*, it is undisputed that the arbitration award adversely affects a non-party to that proceeding.  Indeed, USF&G is, because of the award, liable to Westra for over $1 million.  Further, USF&G was not an idle bystander during the arbitration.  See Cecil's, Inc. v. Morris Mech. Enter., Inc., 735 F.2d 437, 439-40 (11th Cir. 1984) (holding that where surety aware of arbitration and chose to stand aside, surety could not later discredit award), cited in Isidor Paiewonsky

Assoc., Inc. v. Sharp Prop., Inc., 998 F.2d 145, 155 (3d Cir. 1993).[1] Rather, it funded Alexander's defense during the proceedings, and relied upon Alexander to appeal the award. Alexander's unexpected bankruptcy deprived USF&G of the opportunity to challenge the liability imposed upon it by virtue of that award. Cf. U.S. ex rel. Frontier Const., Inc. v. Tri-State Mgmt. Co., 262 F. Supp. 2d 893, 895-96 (N.D. Ill. 2003) (holding that where surety did not have full and fair opportunity to contest arbitration decision it would not be precluded from relitigating arbitration issues); Ufheil Const. Co. v. Town of New Windsor, 478 F. Supp. 766, 769 (S.D.N.Y. 1979) (same), aff'd, 636 F.2d 1204 (2d Cir. 1980); 6 BRUNER & O'CONNOR ON CONSTRUCTION LAW § 20:96 (2005) ("[I]f the surety can establish that it . . . . did not have a full and fair opportunity to contest its liability, it may escape the preclusive effect of the arbitration award."); DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983) (holding that employee has standing to challenge arbitration award where union does not fairly represent employee in arbitration); Beidleman v. Stroh Brewery Co., 182 F.3d 225, 236 (3d Cir. 1999) (same).

Nor is the court convinced that USF&G's challenge to the award, raised as a defense in these proceedings, violates the bankruptcy court's automatic stay.

---

[1] See also Isidor, 998 F.2d at 156 (stating that nonparty to arbitration "waived its right to challenge its exclusion (as a party) from the arbitration proceedings when it allowed the arbitration to proceed without requesting inclusion"); Mass. Bonding & Ins. Co. v. Robert E. Denike, Inc., 92 F.2d 657, 658 (3d Cir. 1937) ("[A] judgment against the principal is prima facie evidence against the surety, and if the surety participates in the action against his principal, he is concluded as to the issues therein decided against his principal.").

Certainly, the stay extends to arbitration proceedings, see Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp., No. 02-1580, 2003 WL 22928045, at *2 (D. Del. 2003); see also Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1157 n.11 (3d Cir. 1989), and, a bankruptcy trustee is empowered to appeal an arbitration award, see 1 DOMKE ON COM. ARB. § 13:15 ("[A] trustee in bankruptcy has both the right and duty to arbitrate a dispute arising out of a contract entered into by the bankrupt party regarding a matter which occurred prior to the adjudication of bankruptcy."). However, the issues and claims in this case are discernible, and the outcome—whatever that may be—will not affect the bankruptcy estate.[2]  See Acands, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 259-60 (3d Cir. 2006) (stating that arbitration proceedings violate bankruptcy stay "as soon as the scope of the parties' submissions support an award that could diminish the [bankruptcy] estate."); cf. Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) ("[W]ithin one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue.").

---

[2] Indeed, USF&G likely could have intervened in Alexander's aborted attempt to vacate the award. See FED. R. CIV. P. 24(a)(2) (governing intervention); F.W. Woolworth Co. v. Misc. Warehousemen's Union, Local No. 781, 629 F.2d 1204, 1213 (7th Cir. 1980) (holding that employees could intervene to challenge arbitration award where union representing employees' interests chose not to appeal adverse decision); S.I. Strong, *Intervention and Joinder as of Right in International Arbitration: An Infringement of Individual Contract Rights or a Proper Equitable Measure?*, 31 VAND. J. TRANSNAT'L L. 915, 960 ("Where the courts find that the arbitration directly affects the third parties' interests, it will generally allow intervention under Federal Rule of Civil Procedure 24.").

One additional factor deserves consideration. Westra could have sought a confirmation of the arbitration award in the bankruptcy action, see <u>In re Elcom Tech. Corp.</u>, 339 B.R. 354 (Bankr. E.D. Pa. 2006); <u>In re Sacred Heart Hosp. of Norristown</u>, 200 B.R. 826 (Bankr. E.D. Pa. 1996), but it chose to commence suit against USF&G in this court. It would be manifestly unfair to deny USF&G the opportunity to defend itself, and to reject its challenge the arbitration award, in these same proceedings.

## III.   Conclusion

Given the unique circumstances of this case, USF&G will be permitted to proceed with its motion to vacate the arbitration award. An appropriate order will issue.

    /s/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        April 28, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTRA CONSTRUCTION, INC.,** | : | **CIVIL ACTION NO. 1:03-CV-0833** |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| **UNITED STATE FIDELITY & GUARANTY COMPANY,** | : | |
| **Defendant** | : | |

# **ORDER**

AND NOW, this 28th day of April, 2006, upon consideration of plaintiff's motion (Doc. 25) to dismiss defendant's motion to vacate or modify an arbitration award, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 25) to dismiss defendant's motion to vacate or modify an arbitration award is DENIED.

2. Defendant shall file a brief, on or before May 19, 2006, in support of its motion (Doc. 22) to vacate or modify an arbitration award.

3. Plaintiff shall file a brief in opposition on or before June 9, 2006.

4. Defendant shall be permitted to file a brief in reply on or before June 23, 2006.

                                                                                      /s/ Christopher C. Conner
                                                                                      CHRISTOPHER C. CONNER
                                                                                      United States District Judge