IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WESTRA CONSTRUCTION, INC.,** : | **CIVIL ACTION NO. 1:03-CV-0833** |
| Plaintiff : | |
| : | **(Judge Conner)** |
| v. : | |
| **UNITED STATES FIDELITY &** : | |
| **GUARANTY COMPANY,** : | |
| Defendant : | |

## MEMORANDUM

Presently before the court is the motion (Doc. 22) to vacate or modify the arbitration award, filed by defendant United States Fidelity & Guaranty Company ("USF&G"). For the reasons that follow, the motion will be denied.

### I.  Factual and Procedural Background

####   A.  The Parties

In April 1999, CCI Construction Company, Inc. ("CCI") entered into a contract to become the construction manager for a Pennsylvania Turnpike Commission project. (Doc. 1 ¶ 5; Doc. 22 ¶ 9.) When CCI defaulted on this contract, it was assigned to Alexander Construction, Inc. ("ACI"). (Doc. 1 ¶¶ 9-10; Doc. 22 ¶¶ 12-13.) USF&G served as ACI's surety with respect to the contract. (Doc. 1 ¶¶ 6, 7, 11; Doc. 22 ¶ 14.)

Prior to CCI's default, plaintiff Westra Construction, Inc. ("Westra") entered into a subcontract with CCI to perform the general trades work on the turnpike project. (Doc. 1 ¶ 8; Doc. 22 ¶ 10.) At USF&G's request, Westra signed a

"Subcontractor Ratification and Assignment Agreement" ("Ratification Agreement"). This agreement ratified the terms of the original subcontract with CCI and permitted its assignment to ACI. (Doc. 1 ¶ 15; Doc. 22 ¶¶ 15-16.)

### B. The Dispute

The turnpike project was substantially completed on May 7, 2001. (Doc. 22 ¶ 20; Doc. 43 at 5,007.) In August 2001, Westra made approximately twenty-eight demands for payment from ACI, which totaled more than $900,000. (Doc. 22 ¶ 22; see also Doc. 41, Ex. F.) ACI requested substantiation of these claims. (Doc. 22 ¶ 23; see also Doc. 41, Ex. G.) Westra did not provide such substantiation. (Doc. 22 ¶ 14.) Accordingly, ACI rejected Westra's claims. (Doc. 40 at 9.)

### C. The Arbitration Proceedings

On August 6, 2002, Westra filed a demand for arbitration with the American Arbitration Association ("AAA").[1] Westra requested $2.3 million in damages, but did not include any documentation to support this request. (Doc. 22 ¶ 24; see also Doc. 41, Ex. H.) ACI objected to Westra's claims on the basis that they were untimely and unsupported by proper documentation. As a result, Westra was ordered to submit a document identifying each claim by content and amount. (Doc. 22 ¶ 25.) In response, Westra submitted a first amended claim, which lowered the amount of damages requested to $1.6 million. (See Doc. 41, Ex. I.) This claim

---

[1] The contract between the parties mandated that all disputes be resolved "by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect." (Doc. 22, Ex. A-1 at ¶ 14.1.)

2

was accompanied by a spreadsheet that separated the damages requested into 103 claims, several of which had not been asserted previously. (Doc. 22 ¶¶ 26-27.) ACI conceded that a small amount was due Westra, but objected to the remaining claims as untimely, unsupported by documentation, and barred by the Ratification Agreement. (Id. ¶¶ 28-29; Doc. 40 at 12.) ACI also raised a counterclaim which exceeded the amount it purported to owe Westra; therefore, no payment was made. (Doc. 22 ¶ 29.)

On July 3, 2003, Westra provided thousands of pages of documents in support of its claims. (Id. ¶ 30.) The arbitration proceedings commenced four days later on July 7, 2003 and spanned eighty-five hearing days. (Id. ¶¶ 30, 32.) Nearly one month after the arbitration proceedings began, Westra submitted a second amended claim, which increased its number of claims to 115 and its damages to $1.8 million.[2] (Id. ¶ 31; see also Doc. 41, Ex. K.)

At the conclusion of the arbitration proceedings, Westra filed a "final demand" of $3.9 million, including interest, penalties, fees, and costs. (Doc. 40 at 15; see also Doc. 41, Ex. M.) On August 2, 2005, the arbitration panel awarded Westra: (1) $800,354.00 in damages, including interest, (2) $19,589.18 in fees and costs, and (3) $195,000.00 in attorney's fees. (Doc. 22 ¶¶ 39-40; see also Doc. 22, Ex. E.) The panel also awarded $81,800.00 in damages to ACI, but did not award ACI any

---

[2] ACI's response to Westra's second amended claim was similar to its response to Westra's first amended claim. (Doc. 40 at 13-14.)

attorney's fees or costs.  (Doc. 22 ¶ 41; see also Doc. 22, Ex. E.)  The panel did not issue a written decision in support of its award.  (Id.)

### D. The Instant Proceedings

Prior to completion of the arbitration proceedings, Westra initiated the instant action against USF&G.  (See Doc. 1.)  Westra asserts that as ACI's surety, USF&G is liable for the entire amount of the arbitration award.  (Doc. 1 ¶¶ 13, 24.)  In 2005, ACI declared bankruptcy, so it could no longer challenge the validity of the arbitration award.  (Doc. 40 at 18-19.)  By order of court dated April 28, 2006 (Doc. 37), USF&G was permitted to file the instant motion to vacate the arbitration award in ACI's stead.  Oral argument on the motion was held on November 21, 2006, and the parties were granted leave of court to supplement their briefs.  (Docs. 53, 55.)  This motion has been fully briefed and is ripe for disposition.[3]

## II. Standard of Review

When reviewing an arbitration award, a district court does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."  Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., Civ. Act. No. 06-CV-351, 2006 WL 2927636, *5 (M.D. Pa. Oct. 12, 2006) (citing Tanoma Mining Co. v. Local Union No. 1269, 896 F.2d 745, 747 (3d Cir. 1990)).  To the contrary, judicial review of an arbitration award is "extremely deferential," and vacatur is appropriate only in "exceedingly narrow circumstances."  Parsons

---

[3] The court commends counsel of record for their insightful and thorough presentations, both during argument and in their written submissions to the court.

Energy & Chems. Group, Inc. v. Williams Union Boiler, 128 F. App'x 920, 925 (3d Cir. 2005). Specifically, a district court has the power to vacate an arbitration award where: (1) the award was procured by corruption, fraud, or undue means, (2) the arbitrators were corrupt or partial, (3) the arbitrators were guilty of misconduct, (4) the arbitrators so imperfectly executed their powers that a mutual, final, and definite award was not made, or (5) the arbitrators' decision evidences a manifest disregard for the law. 9 U.S.C. § 10; Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).

### III. **Discussion**[4]

USF&G contends that the arbitration award should be vacated because: (1) the arbitrators so imperfectly executed their powers that they were unable to reach a final and fair disposition of the matter, and (2) the arbitrators manifestly disregarded the law. The court will address these grounds for vacatur *seriatim*.

#### A. **Imperfect Execution of Powers**

USF&G argues that the arbitrators imperfectly executed their powers by allowing Westra to: (1) use perjured testimony in support of its claims, (2) utilize thousands of pages of documents that were provided only days before the arbitration proceedings began, and (3) amend its claims multiple times during the

---

[4] Jurisdiction over the parties' claims is based on diversity of citizenship, see 28 U.S.C. § 1332, and neither party disputes the applicability of Pennsylvania law, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938); see also Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992) (noting that federal courts sitting in diversity must apply the substantive law of the state of the forum state).

course of the proceedings. (See Doc. 22 at 16.) In short, USF&G alleges that the arbitrators "refused to impose any order or regularity upon the proceedings." (Doc. 40 at 47.)

To determine whether an arbitrator imperfectly executed his or her powers, the court "must examine both the form of relief awarded by the arbitrator as well as the terms of that relief." Sherrock, 2006 WL 2927636, at *7. The court must affirm the award so long as: (1) the form of the award "can be rationally derived either from the agreement between the parties or from the parties['] submissions to the arbitrators," and (2) the terms of the award are not "completely irrational." Id. (citing Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir. 1989)); see also Piller v. Valentino, 106 F. App'x 119, 120 (3d Cir. 2004). An award is not irrational "as long as there is *any* evidence to support it." Edward Mellon Trust v. UBS Painewebber, Inc., No. 2:06-CV-0184, 2006 WL 3227826, *6 (W.D. Pa. Nov. 6, 2006) (emphasis in original).

In the instant case, USF&G essentially asks the court to vacate the arbitration award because of several procedural irregularities. However, USF&G has provided no authority, and the court finds none, for the proposition that such irregularities are sufficient to warrant vacatur of an arbitration award. To the contrary, vacatur is appropriate only where an arbitrator has "venture[d] beyond the bounds of his or her authority." Matteson v. Ryder Sys., Inc., 99 F.3d 108, 112 (3d Cir. 1996); see also Royal Pioneer Paper Box Mfg. Co. v. United Paper Workers Int'l Union, No. 96-310, 1997 WL 330391, at *5 (E.D. Pa. June 5, 1997) (finding that

arbitrators did not imperfectly execute their powers where each of their rulings was "a direct answer to the issues presented"); Carmel v. Circuit City Stores, Inc., No. CIV. A. 99-MC-240, 2000 WL 1201891, at *4 (E.D. Pa. Aug. 22, 2000) (holding that finding of imperfect execution of powers required showing that arbitration award was "tainted by an omission or refusal to make a finding"). A review of the arbitral award in the instant case reveals that the arbitrators resolved only those issues that had been properly presented to them and rationally derived the award from the parties' submissions and arguments. (Compare Doc. 22, Ex. E, with Doc. 41, Ex. M at 6-12; see also Doc. 59, Exs. A-D.) Accordingly, the procedural irregularities cited by USF&G do not rise to the level of imperfect execution of powers and do not warrant vacatur of the arbitration award.

### B. Manifest Disregard of the Law

To establish that an arbitrator manifestly disregarded the law, the moving party must prove that the arbitrator was "fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." Black Box Corp. v. Markham, 127 F. App'x 22, 25 (3d Cir. 2005); see also Koken v. Cologne Reinsurance Ltd., Civ. A. No. 1:CV-98-0678, 2006 WL 2460902, *6 (M.D. Pa. Aug. 23, 2006) (stating that an arbitrator must have ignored law that was "well defined, explicit, and clearly applicable to the case" to constitute manifest disregard of the law). An arbitrator is charged with knowledge of only that law that has been "identified by the parties to the arbitration." Black Box, 127 F. App'x at 25. The court must enforce an arbitration award as long as the arbitrator has "*arguably*

7

construed or applied the contract," Piller, 106 F. App'x at 121 (emphasis in original), and may not vacate an arbitration award simply because the arbitrator "made an error of law," Sutter v. Oxford Health Plans LLC, No. 05-5223, 2007 WL 625625, at *2 (3d Cir. Feb. 28, 2007).

Arbitrators are not required to state the reasons for an arbitration award. Forest Elec. Corp. v. HCB Contractors, Civ. A. Nos. 91-1732, 91-5350, 1995 WL 37586, at *6 (E.D. Pa. Jan. 30, 1995) (citing Atkinson v. Sinclair Refining Co., 370 U.S. 238, 244 n.4 (1962)). Accordingly, "the absence of an explanation does not signify that the arbitrators acted in manifest disregard of the law." Aetna Cas. & Sur. Co. v. Dravo Corp., No. CIV. A. 97-149, 1997 WL 560134, at *2 (E.D. Pa. July 31, 1997). However, such lack of explanation makes it "nearly impossible for the court to determine whether [the arbitrators] acted in disregard of the law." See id. When arbitrators do not offer a written explanation for their determination, a court "should confirm the award if there are grounds for the arbitrator's decision found in the facts of the case." Millenium Validation Servs., Inc. v. Thompson, C.A. No. 02-1430, 2006 WL 3159821, *5 (D. Del. Nov. 3, 2006).

In the action *sub judice*, USF&G asserts that the arbitrators erred by failing to apply the following provisions of the parties' contract: (1) notice and dispute resolution provisions, (2) Ratification Agreement provisions, and (3) attorney's fees provisions. (See Doc. 22 at 18.) Proceeding under the above framework, the court will address USF&G's arguments *seriatim*.

1. **<u>Notice and Dispute Resolution Provisions</u>**

The notice and dispute resolution provisions establish mandatory procedures through which Westra was to assert its claims against ACI. (<u>See</u> Doc. 40 at 25-26.) Specifically, Westra was required, *inter alia*, to: (1) notify ACI of any claims for additional costs within five days after such costs were incurred,[5] (2) provide supporting documentation for all such claims,[6] and (3) comply with the contract's dispute resolution procedures before submitting such claims to arbitration.[7] USF&G argues that the arbitral award should be vacated because the arbitrators chose to ignore Westra's failure to comply with the aforementioned provisions.

In the absence of a written explanation, it is "nearly impossible" for the court to determine why the arbitrators did not require strict compliance with the notice and dispute resolution provisions. See <u>Aetna</u>, 1997 WL 560134, at *2. However, the

---

[5] Paragraph 6.3 of the contract states:

6.3 CLAIMS RELATING TO CONTRACTOR. The Subcontractor shall give the Contractor written notice of all claims . . . within five (5) days of the occurrence of the event for which claim is made; otherwise, such claims shall be deemed waived.

(Doc. 22, Ex. A-1 ¶ 6.3.)

[6] The contract states, "The responsibility to substantiate Claims shall rest with the party making the Claim." (Doc. 22, Ex. A-2 at ¶ 4.3.1.)

[7] The claim resolution procedures are set forth in Articles 4.4 and 4.5 of the contract. (Doc. 22, Ex. A-2 at ¶¶ 4.4.1, 4.4.3, 4.4.4, 4.5.4, 4.5.6.) Generally, these provisions require the parties to provide the architect with an opportunity to resolve all claims before submitting such claims to arbitration. (Doc. 22, Ex. A-2 at ¶ 4.5.4.)

court finds support for the arbitral award in the hearing transcripts and in the parties' post-hearing submissions to the arbitrators.  See Millenium, 2006 WL 3159821, at *5 (stating that where an arbitrator has not issued a reasoned decision, a court should confirm the award if "there are grounds for the arbitrator's decision found in the facts of the case").  In its post-hearing brief to the arbitrators, Westra argued that ACI had "waived the right to enforce" the notice and dispute resolution provisions by:  (1) paying claims without regard to whether they complied with the provisions, and (2) abandoning closely-related contractual provisions regarding pricing disputes.  (Doc. 45, Ex. A at 17-20.)  To support its contentions, Westra proffered an email dated June 1, 2000, in which the Turnpike's project manager expressed his concern that "pricing and contractual responsibility issues" were becoming too time-consuming and suggested that the parties "find a method to build now and resolve pricing responsibility disputes later." (Doc. 43 at 161-62, 2427, 2468, 2475.)  Westra also proffered testimony that the company had been instructed by ACI to proceed with construction without first resolving its pricing issues and that ACI had never refused to consider a claim because it had "been submitted more than five days after the cost event."  (Id. at 1391-93, 2033, 2035.)

      The court makes no intimation that the aforementioned evidence was sufficient as a matter of law to justify the arbitrators' findings.  See Coltec Indus., Inc. v. Elliott Turbocharger Group, Inc., Nos. CIV. A. 99-1400, 99-MC-36, 1999 WL 695870, at *5 (E.D. Pa. Sept. 9, 1999) (finding that the court was precluded from reviewing "the sufficiency of the evidence in support of the arbitrator's findings and

legal conclusions in the award and reach[ing] a different result" under the guise of conducting a manifest disregard analysis).  However, it is beyond peradventure that Westra presented at least *some* evidence to justify the arbitrators' decision to disregard the notice and dispute resolution provisions.  See Edward Mellon, 2006 WL 3227826, *6 (holding that a court should decline to vacate an arbitration award "as long as there is *any* evidence to support it" (emphasis in original)).  While USF&G has alleged "facts which would allow the Court to disagree with the arbitrators' decision" regarding the notice and dispute resolution provisions,  Id. at *7, such evidence is insufficient to establish that the arbitrators recognized and consciously disregarded a controlling legal principle, Black Box, 127 F. App'x at 25.  Accordingly, USF&G has failed to establish that the arbitrators' interpretation of the notice and dispute resolution provisions warrants vacatur of the arbitration award.

### 2. **Ratification Agreement Provisions**

When CCI defaulted, Westra signed a Ratification Agreement, which permitted assignment of Westra's subcontract to ACI.  (Doc. 1 ¶ 15; Doc. 22 ¶¶ 15-16.)  The relevant provisions of the Ratification Agreement are as follows:

> 5)  The Subcontractor does hereby: (a) Warrant that . . . it does not have or intend to assert against the Surety any other demands, losses, costs, damages, expenses, or claims of any nature whatsoever arising out of or related to the Work performed through the Termination Date.
>
> 7)  . . . (a) The Subcontractor hereby releases and forever discharges the Surety from any and all claims, demands, loss, costs, damages and expenses of every kind and nature arising out of or related to the Work performed up to and including the Default Date.

(Doc. 22, Ex. C at ¶¶ 5(a), 7(a) (emphasis added)).  USF&G urged the arbitrators to interpret these provisions to bar all claims that had arisen prior to CCI's default. (See Doc. 40 at 33; Doc. 59, Ex. B at 45-50.)  Westra argued for a narrower interpretation, i.e., that the provisions bar only those claims that relate to "Work performed" prior to CCI's default.  (Doc. 45 at 19.)  By Westra's definition, work is performed when "labor or materials" are supplied.  (Doc. 59, Ex. A at 38-39.) Westra argued that it provided labor and materials for all claims submitted to arbitration after CCI's default and that, as a result, the Ratification Agreement did not bar any of its claims.  (Id. at 37-38.)

Again, the lack of explanation for the arbitral award makes it difficult for the court to discern the arbitrators' reasoning.  See Aetna, 1997 WL 560134, at *2. However, the court finds it reasonable to assume that the arbitrators were persuaded by and chose to adopt Westra's interpretation of the Ratification Agreement.  See Brentwood Med. Assocs. v. United Mine Workers of America, 396 F.3d 237, 241 (3d Cir. 2005) (holding that courts must "enforce an arbitration award if it was based on an *arguable* interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination" (emphasis added)).[8]  Assuming *arguendo* that the arbitrators'

---

[8] Although Brentwood was decided in the context of a labor arbitration dispute, the court is persuaded by its rationale in this instance.  396 F.3d at 241. The court notes that the Third Circuit Court of Appeals has commented on the similarity between "the principles governing labor and commercial arbitration cases."  Swift Indus., Inc. v. Botany Indus., Inc., 466 F.2d 1125, 1130 (3d Cir. 1972).

interpretation was improper, "an erroneous interpretation by the arbitration panel does not warrant a finding of manifest disregard." Koken, 2006 WL 2460902, at *8. Absent evidence that the arbitrators were "fully aware" that their interpretation of the Ratification Agreement was improper, the arbitral award must stand. Black Box, 127 F. App'x at 25. Finding no such evidence, the court will deny USF&G's motion to vacate with respect to this claim.

   **3.**  **Attorney's Fees Provision**

USF&G also argues that the arbitrators' determination that Westra was entitled to attorney's fees as the "prevailing party" was erroneous.[9] (Doc. 40 at 55.) USF&G asserts that Westra was not the prevailing party because it recovered only a small percentage of the damages it initially claimed. (Id. at 50-51.) Westra counters that Pennsylvania law[10] contains no requirement that a party prevail on a majority of its claims in order to be considered the "prevailing party." (Doc. 45 at 26.)

---

[9] The attorney's fees provision provides:

15.4 ATTORNEY'S FEES. Should either party employ and attorney to . . . demand arbitration . . ., the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein.

(Doc. 22, Ex. A-2 at ¶ 15.4.)

[10] Neither party disputes the applicability of Pennsylvania law to this issue. See supra note 4; (see also Doc. 40 at 55-62; Doc. 45 at 26-31.)

13

The Pennsylvania Supreme Court has yet to determine when a party qualifies as a "prevailing party" for purposes of an award of attorney's fees. Applying Pennsylvania law, the Third Circuit Court of Appeals held that the "proper standard for determining which litigant is a 'prevailing party' under a contractual provision regarding attorneys' fees should compare the relief sought by each litigant to the relief each litigant actually received." PPG Indus., Inc. v. Zurawin, 52 F. App'x 570, 580 (3d Cir. 2002). In sharp contrast, the Pennsylvania Superior Court has repeatedly defined "prevailing party" as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Zavatchen v. RHF Holdings, Inc., 907 A.2d 607, 610 (Pa. Super. Ct. 2006); Profit Wize Mktg. v. Wiest, 812 A.2d 1270, 1275 (Pa. Super. Ct. 2002).

Manifest disregard is established only where an arbitrator has ignored law that was "well defined, explicit, and clearly applicable to the case." Koken, 2006 WL 2460902, *6. As evidenced by the above discussion, Pennsylvania jurisprudence interpreting the phrase "prevailing party" is far from well defined and explicit. Accordingly, the court cannot find that the arbitrators ignored clearly applicable law when reaching their decision regarding attorney's fees, and USF&G's motion to vacate will be denied with respect to this claim.

**IV.     Conclusion**

For the foregoing reasons, the court will deny defendant's motion to vacate or modify the arbitration award. An appropriate order will issue.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        March 29, 2007

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTRA CONSTRUCTION, INC.,** | : | **CIVIL ACTION NO. 1:03-CV-0833** |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **UNITED STATE FIDELITY &** | : | |
| **GUARANTY COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

# **ORDER**

AND NOW, this 29th day of March, 2007, upon consideration of defendant's motion to vacate or modify the arbitration award (Doc. 22), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that defendant's motion to vacate or modify the arbitration award (Doc. 22) is DENIED.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge