## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTRA CONSTRUCTION, INC.,** | : | **CIVIL ACTION NO. 1:03-CV-0833** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES FIDELITY &** | : | |
| **GUARANTY COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

Presently before the court is the motion to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2) (Doc. 84), filed by Fidelity and Deposit Company of Maryland ("F&D").  Both plaintiff Westra Construction, Inc. ("Westra") and defendant United States Fidelity & Guaranty Company ("USF&G") oppose the motion for intervention.  (See Docs. 88, 89.)  On April 16, 2008, the court held oral argument on the motion, which has been fully briefed and is ripe for disposition. (See Doc. 96.)  For the reasons that follow, the motion will be denied.

### I.    Factual Background

#### A.    The Instant Litigation

The dispute between Westra and USF&G centers around the construction of a facility for the Pennsylvania Turnpike Commission which began in 1999. Alexander Construction, Inc. ("ACI") served as the general contractor for this project, while Westra served as a subcontractor.  USF&G acted as ACI's surety. (See Doc. 70 at 1.)  After the project was substantially completed in 2001, Westra

made several demands for payment from ACI, which ACI rejected for lack of substantiation.  On August 6, 2002, Westra filed a demand for arbitration with the American Arbitration Association.  The arbitration proceedings commenced on July 7, 2003 and spanned eighty-five hearing days.  On August 2, 2005, the arbitration panel awarded Westra $1 million in damages, fees and costs, and attorney's fees.  Prior to completion of the arbitration proceedings, Westra initiated the instant action against USF&G, asserting that USF&G is liable for the entire amount of the arbitration award as ACI's surety.  (See id. at 2-3.)  USF&G filed a motion to vacate or modify the arbitration award (Doc. 22), which was denied by the memorandum and order of court dated March 29, 2007 (Doc. 70).  The action is currently in the pretrial discovery stage.  (See Doc. 86.)

**B.    F&D's Relationship to the Instant Litigation**

On January 1, 1997, Westra and F&D entered into an agreement of indemnity whereby F&D consented to serve as Westra's surety for all of its construction projects.  (Doc. 84 ¶ 16.)  In connection with the turnpike project, F&D issued a payment bond in the sum of $8.7 million on July 23, 1999.  (Id. ¶ 18.)  Between October of 1999 and February of 2000, Westra entered into five sub-subcontracts with Novinger Group, Inc. ("Novinger").  (Id. ¶ 19.)  Ultimately, a payment dispute arose between Westra and Novinger, and Novinger commenced a lawsuit against Westra and F&D in the Dauphin County Court of Common Pleas.  In settlement of this lawsuit, F&D paid Novinger $402,486.68 between February 27, 2006 and December 20, 2007.  (Id. ¶¶ 20-23.)  F&D has unsuccessfully sought to

2

recover this amount from Westra pursuant to the terms of the indemnity agreement. (Id. ¶¶ 27-28.) F&D now claims that it possesses a right to intervene in the instant action because it is subrogated to any amount up to $402,486.68 that Westra might recover from USF&G. (Id. ¶ 25.)

## II.   Discussion

In response to F&D's motion, Westra and USF&G argue that permitting F&D to intervene would:  (1) defeat this court's subject matter jurisdiction, and (2) violate the intervention standard set forth in Federal Rule of Civil Procedure 24(a)(2). (See Docs. 88, 89.)  The court will address these arguments *seriatim*.

### A.   Subject Matter Jurisdiction

There is no independent jurisdictional basis for intervention.  Accordingly, a party seeking to intervene must demonstrate the existence of a federal question, diversity of citizenship, or supplemental jurisdiction.  See 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1917 (2008).  The instant motion to intervene does not present a federal question; therefore, the court need only address the applicability of diversity and supplemental jurisdiction.

### 1.   Diversity Jurisdiction

The court's subject matter jurisdiction over the action between Westra and USF&G is premised on diversity of citizenship.  See 28 U.S.C. § 1332 (granting district courts original jurisdiction over civil actions between "citizens of different states" with an amount in controversy of greater than $75,000).  The United States

Supreme Court has interpreted § 1332 to require "complete diversity," meaning that "[i]n a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same state as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005).

Here, both F&D and USF&G are Maryland corporations. (See Doc. 87 at 11.) Because USF&G is a defendant, the complete diversity doctrine prohibits the court from exercising diversity jurisdiction over F&D's claims if F&D intervenes as a plaintiff. See Exxon Mobil, 545 U.S. at 553. Accordingly, the instant jurisdictional question turns on which party designation is properly assigned to F&D. Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc., 54 F.3d 156, 160 (3d Cir. 1995) (stating that a court must properly align the parties before deciding whether jurisdiction exists "[w]here party designations have jurisdictional consequences"). If F&D is appropriately viewed as a plaintiff, the court may not exercise diversity jurisdiction over F&D's claims. If, however, F&D is properly considered a defendant, the court may entertain F&D's claims.

In determining the appropriate party designation to be assigned to an intervenor, the court must "penetrate the nominal party alignment and . . . consider the parties' actual adversity of interest." Id. "Opposing parties must have a collision of interests over the principal purpose of the suit." Id. While F&D is attempting to intervene as a defendant, Westra argues that the requested alignment is a "transparent attempt" to avoid problems of diversity jurisdiction because

4

F&D's interests make it more akin to a plaintiff than to a defendant.  (See Doc. 88 at

13.)  The court agrees and finds that F&D's interests are adverse to USF&G's and

not to Westra's.  The "principal purpose" of the instant litigation is to determine

USF&G's liability to finance the arbitration award on ACI's behalf.  (See id.); see

also Polak v. Kobayashi, No. 05-330, 2005 WL 2008306, at *2 (D. Del. Aug. 22, 2005)

(realigning the parties with reference to the "primary issue" in the lawsuit);

Richman, Berenbaum & Assoc., P.C. v. Carolina Cas. Co., No. 02-3195, 2002 WL

1895900, at *2 (E.D. Pa. Aug. 14, 2002) (same).  Both F&D and Westra are interested

in establishing USF&G's liability to finance the arbitration award and in

maximizing the amount of that liability.  USF&G is interested in just the opposite

outcome, namely, proving that it is not liable for any amount of the arbitration

award.  This "collision of interests" bars alignment of F&D and USF&G on the

same side of the dispute.[1]  See Dev. Fin. Corp., 54 F.3d at 160.  Accordingly, the

court must realign F&D as an intervening plaintiff, which prevents the court from

exercising diversity jurisdiction over F&D's claims.

## 2.   **Supplemental Jurisdiction**

Courts are ordinarily permitted to exercise supplemental jurisdiction over

any claims that are so related to the original action that they "form part of the same

---

[1] The only dispute between F&D and Westra concerns how to allocate any recovery
that is ultimately received from USF&G.  Because allocating recovery is not the
"principal purpose" of the instant action, there is no "collision of interests" between
F&D and Westra that would prohibit them from acting as co-plaintiffs.  See Dev.
Fin. Corp., 54 F.3d at 160.

case or controversy."  28 U.S.C. § 1367(a).  To satisfy the case or controversy

requirement, all claims, including "claims that involve the . . . intervention of

additional parties," must derive from a "common nucleus of operative fact."  <u>See</u>

<u>Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity</u>, 142 F. App'x 573, 575

(3d Cir. 2005); 28 U.S.C. § 1367(a).  In the action *sub judice*, F&D's claims share a

common nucleus of operative fact with Westra's claims against USF&G.  Both sets

of claims concern USF&G's liability to finance the same arbitration award.

Accordingly, the case or controversy requirement is satisfied in the instant case.

However, this does not end the court's supplemental jurisdiction inquiry.

Congress has placed a specific limitation on a court's ability to exercise

supplemental jurisdiction over intervention claims in cases founded solely on

diversity of citizenship:

> In any civil action of which the district courts have original jurisdiction
> founded solely on section 1332 of this title, the district courts shall not have
> supplemental jurisdiction . . . over claims by persons . . . seeking to intervene
> as plaintiffs under Rule 24 of such rules, when exercising supplemental
> jurisdiction over such claims would be inconsistent with the jurisdictional
> requirements of section 1332.

28 U.S.C. § 1367(b).  F&D's intervention request satisfies the first three

requirements of this statute:  (1) the underlying civil action between Westra and

USF&G is founded on diversity, (2) F&D seeks to intervene under Rule 24, and (3)

the court has determined that F&D would be appropriately designated a plaintiff if

it were permitted to intervene.  However, the dispositive inquiry is whether F&D's

intervention "would be inconsistent with the jurisdictional requirements of section 1332." Id.

Few courts have attempted to define the contours of the final requirement of § 1367(b).  Those that have addressed the issue have concluded that intervention is inconsistent with the jurisdictional requirements of § 1332 only if the intervening party is indispensable as defined by Federal Rule of Civil Procedure 19(b).  See Mattel v. Bryant, 446 F.3d 1011, 1013 (9th Cir. 2006); Aurora Loan Servs., Inc. v. Craddieth, 442 F.3d 1018, 1025-26 (7th Cir. 2006); see also 2 SAMUEL ADAMS & RYAN M. TOSI, BUSINESS & COMMERCIAL LITIGATION IN FEDERAL COURTS § 15.53 (2d ed. 2007) ("[I]f an intervenor's entry in the case can be supported by . . . supplemental jurisdiction, a federal question or diversity of citizenship between the intervenor and the other parties to the litigation is unnecessary, *provided that the nondiverse intervenor was not an indispensable party . . . at the time the action was filed.*" (emphasis added)).  This conclusion is founded upon the long-standing, judicially-created doctrine that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."  Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (citing Wichita R.R. & Light Co. v. Pub. Util. Comm'n of Kan., 260 U.S. 48, 54 (1922) ("Jurisdiction once acquired . . . is not . . . defeated by the intervention . . . of a party whose presence is not essential to a decision of the controversy between the original parties.")).  Section 1367 was not intended to abrogate this judicially-created doctrine.  In fact, several months after § 1367's enactment, the United States Supreme Court reaffirmed the doctrine's

7

validity in <u>Freeport-McMoRan</u>.  498 U.S. at 428; <u>see also</u> <u>Mattel</u>, 446 F.3d at 1014

("Neither § 1332 nor § 1367 upset the long-established judge-made rule that the

presence of a nondiverse and not indispensable defendant intervenor does not

destroy complete diversity.").

   The policies behind § 1367(b) lend further credence to this conclusion.  Judge

Posner, writing for the Seventh Circuit Court of Appeals, has stated that the

"evident purpose" of § 1367(b):

> is to prevent a two-step evasion of the requirement of complete diversity of
> citizenship by a person who, being of the same citizenship as the defendant,
> waits to sue until a diverse party with which it is aligned sues the defendant,
> and then joins the suit as an intervening plaintiff.

<u>Aurora</u>, 442 F.3d at 1025.  In other words, § 1367(b) "reflects Congress' intent to

prevent *original* plaintiffs . . . from circumventing the requirements of diversity."

<u>Id.</u> (emphasis in original); <u>see also</u> <u>Grimes v. Mazda N. Am. Operations</u>, 355 F.3d

566, 572 (6th Cir. 2004); <u>State Nat'l Ins. Co. v. Yates</u>, 391 F.3d 577, 581 (5th Cir. 2004);

<u>Viacom Int'l, Inc. v. Kearney</u>, 212 F.3d 721, 726-27 (2d Cir. 2000).  Section 1367(b)

was not intended to prevent "the intervention of a party who had 'no interest

whatsoever in the outcome of the litigation until sometime after suit was

commenced.'" <u>Aurora</u>, 442 F.3d at 1025 (quoting <u>Freeport-McMoRan</u>, 498 U.S. at 428).[2]

Because it is premised upon long-standing judicial doctrines and the policies underlying § 1367(b), the court adopts the view that only intervention of an indispensable party falls within the exception to supplemental jurisdiction set forth in § 1367(b).  Therefore, to resolve the supplemental jurisdiction inquiry presented by the instant case, the court must determine whether F&D is an indispensable party as defined by Federal Rule of Civil Procedure 19(b).  F&D argues that it is not an indispensable party because its interest in the instant action did not arise until it made its first payment to Novinger in 2006, which was more than three years after the action between Westra and USF&G had commenced.  (Doc. 90 at 6-7.)  The

---

[2]  The Third Circuit has not construed the language at issue in § 1367(b).  However, the Third Circuit has stated, without reference to § 1367:

> If an intervenor's entry in the case can be supported by ancillary jurisdiction, diversity of citizenship between the intervenor and the other parties to the litigation is unnecessary.  If, however, the non-diverse intervenor was an indispensable party under Rule 19 when the complaint was filed, the action must be dismissed.

<u>Angst v. Royal Maccabees Life Ins. Co.</u>, 77 F.3d 701, 704 (3d Cir. 1996) (internal citations omitted); <u>see also</u> 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3608 (2008) (stating that, in <u>Angst</u>, "the court neglected to consider Section 1367(b)'s limitations on supplemental jurisdiction over claims by or against nondiverse intervenors in actions based solely on diversity").  Although not conclusive of the Third Circuit's position, the aforementioned language in <u>Angst</u> suggests that it would rule consistently with its sister courts in the Seventh and Ninth Circuits that § 1367(b) is limited to the intervention of indispensable parties.  A contrary result would render wholly unnecessary the court's discussion of indispensable parties in <u>Angst</u>.

court agrees.  F&D's claim arises from the doctrine of equitable subrogation, which

provides that "a surety who pays the debt of another is entitled to all the rights of

the person he paid to enforce his right to be reimbursed." N. Am. Specialty Ins. Co.

v. Chichester Sch. Dist., No. 99-2394, 2000 WL 1052055, at *6 (E.D. Pa. July 20, 2000).

In other words, the doctrine of equitable subrogation allows F&D to "stand[] in the

shoes" of Novinger for purposes of pursuing reimbursement from USF&G.  Id.

Even if F&D had a contract-based right to proceed against Westra at some earlier

time, its right to equitable subrogation did not arise until it paid Westra's debt to

Novinger in November of 2006.  See id.  Accordingly, F&D was not indispensable to

the instant action at its inception, and its attempt to intervene does not fall within

the exception to supplemental jurisdiction set forth in § 1367(b).

In sum, F&D's claims form part of the same "case and controversy" as

Westra's underlying claims against USF&G, and F&D's claims do not fall within

the § 1367(b) exception.  As a result, the court may exercise supplemental

jurisdiction over F&D's claims *provided that* the F&D's request for intervention

satisfies the dictates of Federal Rule of Civil Procedure 24(a)(2).  The court turns

now to an analysis of this rule.

## B.  Rule 24(a)(2) Intervention

Federal Rule of Civil Procedure 24(a)(2) provides that:

[T]he court must permit anyone to intervene who:
(2) claims an interest relating to the property or transaction that is the
subject of the action, and is so situated that disposing of the action may as a
practical matter impair or impede the movant's ability to protect its interest,
unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a).  The Third Circuit has held that:

> a non-party is permitted to intervene under Rule 24(a)(2) only if:  (1) the
> application for intervention is timely; (2) the applicant has a sufficient
> interest in the litigation; (3) the interest may be affected or impaired, as a
> practical matter by the disposition of the action; and (4) the interest is not
> adequately represented by an existing party in the litigation.

Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 365-

66 (3d Cir. 1995).  Each of these requirements must be met to permit a party to

intervene as of right.  Id. at 366.  The court will discuss the four intervention

elements *seriatim*.

**1.   Timeliness**

The timeliness of an intervention motion "is determined by the totality of the

circumstances."  In re Cmty. Bank of N. Va., 418 F.3d 277, 314 (3d Cir. 2005).  When

conducting a timeliness analysis, the court should be guided by the following

factors:  "(1) the stage of the proceeding; (2) the prejudice that delay may cause the

parties; and (3) the reason for the delay."  Id.  While the instant action is over four

years old, F&D argues that its motion is timely because discovery has not been

completed and dispositive motions have not been filed.  (Doc. 87 at 9.)  Westra

concedes that F&D's motion is timely.  (See Doc. 88 at 6 n.1.)  However, USF&G

argues that it will be prejudiced by F&D's intervention because the need to litigate

issues regarding priority rights may delay the progress of the instant action.  (See

Doc. 89 at 8-9.)[3]  Despite USF&G's opposition, the court finds that F&D's motion to

---

[3]   USF&G does not object to intervention provided that the action is bifurcated
and that Westra's claims against USF&G are adjudicated before F&D's claims
against Westra.  (Doc. 89 at 10.)

intervene is timely because any potential prejudice to USF&G could be avoided by
bifurcating Westra's claims against USF&G from F&D's claims against Westra.

### 2.    Interest in Litigation

Rule 24(a)(2) requires an intervenor to establish "an interest relating to the
property or transaction which is the subject of the action." Mountain Top, 72 F.3d
at 366. Such interest must be "significantly protectable," meaning that the lawsuit
in which the party seeks to intervene must present "a tangible threat to a legally
cognizable interest." Id. The Third Circuit has stated that "a mere economic
interest in the outcome of the litigation is insufficient to support a motion to
intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to
recover in a separate suit ordinarily does not give the third party a right to
intervene." Id. On the other hand, "an intervenor's interest in a specific fund is
sufficient to entitle intervention in a case affecting that fund." Id.

In distinguishing between purely economic interests and interests in specific
funds, a court must determine whether the intervenor seeks to recover from the
general assets of a party or from a discrete, limited fund held by that party, such as
a trust fund or an escrow account. See Liberty Mutual Ins. Co. v. Treesdale, Inc.,
419 F.3d 216, 222 (3d Cir. 2005). Where the assets at issue are held in a discrete,
limited fund, a "specific fund" exists in which an intervenor may possess a
significantly protectable interest. See Mountain Top, 72 F.3d at 366 (finding that an
intervenor possessed a significantly protectable interest in a "specific fund" where
the assets at issue had been paid by an insurance carrier and were being held in an

12

"express trust" that named the intervenor among its intended beneficiaries).

Where the assets at issue have not been set aside but remain commingled with the

party's other property, no "specific fund" exists.  The intervenor's interest is purely

economic and is not significantly protectable.  See Liberty Mutual, 419 F.3d at 221

(finding that an intervenor's interest was purely economic where the assets at issue

had not yet been paid by an insurance carrier and that the insurance policy itself

did not qualify as a "specific fund").

In the instant case, F&D claims that it is equitably subrogated to Westra's

right to recover from USF&G and that, as a result, it possesses an interest in the

"specific fund" of any payment made from USF&G to Westra.  (See Doc. 87 at 9-11);

see also Mountain Top, 72 F.3d at 366.  The court finds this argument to be little

more than a transparent attempt to manufacture a significantly protectable interest

in the instant litigation.  Like the assets at issue in Liberty Mutual, the assets at

issue in the instant action have neither been paid by USF&G nor set aside in a

discrete, limited fund.  See 419 F.3d at 221.  Instead, F&D is pursuing the purely

economic interest of ensuring that sufficient assets will exist to satisfy its interests.

This does not constitute a significantly protectable interest for purposes of

intervention.  Accordingly, F&D's motion to intervene will be denied.

### 3.   Effect of Action on Interest

Assuming *arguendo* that F&D possessed a significantly protectable interest

in the instant litigation to warrant intervention, F&D has failed to prove that any

such interest would be affected by the outcome of the instant case.  Should Westra

13

recover from USF&G, F&D will be permitted to litigate the priority of its claim to that recovery in a separate action against Westra.  Moreover, if F&D desires to litigate its rights against Westra at the present time, it could institute a declaratory judgment action against Westra.  Hence, F&D's interest enjoys independent vitality.

### 4.   Adequate Representation of Interest

Furthermore, F&D has failed to prove that any interest it may possess is not adequately represented by the interests of a party to the instant litigation.  "[W]hen a party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented."  Cmty. Bank, 418 F.3d at 315.  To overcome this presumption, an intervenor "must ordinarily demonstrate adversity of interest, collusion or nonfeasance on the part of the party to the suit."  Id.  Westra argues that it adequately represents F&D's interest in recovering from USF&G because both Westra and F&D have the ultimate objective of recovering as much as possible from USF&G.  (Doc. 88 at 12.)  The court agrees.  Both F&D and Westra are inclined to pursue a recovery from USF&G in the highest amount possible.  Counsel for F&D conceded at oral argument that "F&D and Westra are making the exact same claim against USF&G."  (04/16/08 Hrg. Tr. at 7.)  Accordingly, F&D's interests in recovering from USF&G are adequately represented by Westra.  All remaining issues of priority between Westra and F&D may be litigated separately from the instant action.  See supra Part II.B.3.

**III.**   **<u>Conclusion</u>**

While F&D's motion to intervene falls within the court's supplemental

jurisdiction and was timely filed, F&D does not possess a sufficient interest in the

litigation to permit intervention.  Accordingly, the court will deny F&D's motion to

intervene.


   <u>S/ Christopher C. Conner</u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:        April 30, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WESTRA CONSTRUCTION, INC.,** | : | **CIVIL ACTION NO. 1:03-CV-0833** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES FIDELITY &** | : | |
| **GUARANTY COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 30th day of April, 2008, upon consideration of the motion to intervene (Doc. 84), filed by Fidelity and Deposit Company of Maryland, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion to intervene (Doc. 84) is DENIED.

                 _S/ Christopher C. Conner_
                 CHRISTOPHER C. CONNER
                 United States District Judge